United States against Klemis is the third case for argument this morning. Ms. Whipple. Good morning, your honors. My name is Jacqueline Whipple. I represent the defendant's appellant, Richard J. Klemis. May it please the court. Your honors, the government implored the jury to act, not just to find Mr. Klemis guilty based on the fatally flawed evidence presented at trial, but also to pronounce God's judgment on Mr. Klemis, and that he had earned, according to the United States, the official view of the United States, that Mr. Klemis had earned eternal damnation, and that he was as evil as the person who betrayed Jesus Christ. Right, Dante's infernal argument during closing was probably improper, but what's the prejudice here? The prejudice here, your honors, is not simply a matter of taste. It's that the prosecutor implored the jury to convict not on the evidence, but rather on extraneous religious and moral errors. Right, that's an argument that this was improper, and I tend to agree with that. It's an appeal to passion rather than reason. But what's the harm? There's just colossally overwhelming evidence here. The harm is that Mr. Klemis was convicted on all counts. Most glaringly, the prejudice, your honors, is evidenced by a count two conviction, when the evidence was insufficient. And the insufficiency of the evidence in count two was assuaged by the government's prosecutorial misconduct. In particular, your honor, the government, during trial, argued that the trial court, to the trial court, and assured defense counsel as well, that a heroin capsule would be connected to the Tyler McKinney crime scene. And on day three, the government had Bryan Stevenson, a forensic analyst, come immediately after the Tyler McKinney medical evidence and talk about this irrelevant heroin capsule. The government wanted the jury to infer that the heroin capsule was in some way connected to the Tyler McKinney crime scene, when indeed it was no way connected to the crime scene. And it was never cleared up for the jury what the heroin capsule had to do with the case at all. This created an inference. The one piece of physical evidence that possibly could have created an inference that heroin was connected to the crime scene was this heroin capsule, which was improperly introduced in the middle of the government's case, based on the government's assurances, which were false. Additionally, the insufficiency of count two is demonstrated. Is there any reason to think that the victim had access to and used a different source of morphine? There isn't evidence. There wasn't evidence due to a trial that the decedent did use morphine. There was evidence. There was ample evidence that Clemmis sold heroin to the victim shortly before the death, and that that heroin was gone, unless it was in the victim's body. One would think that's a perfectly straightforward basis of conviction. There was evidence adduced at trial that did tend to show distribution of heroin, particularly in the weeks preceding February 23, 2011. Indeed, there was no recovery of heroin at the crime scene, to your point, Your Honor. Yes, that's the basis of an inference that he took the capsules, that his body broke the heroin down into morphine, and he died of a morphine overdose. That's a perfectly straightforward inference. Very difficult to see how any other inference could be sustainable on this record. I was just wondering whether you had a different chain of reasoning about how death happened. There wasn't evidence introduced at trial about a possible different but for cause, except that the government's experts both testified that morphine intoxication was the cause of death, and that they could not conclude medically that heroin was the cause of death. What other source of morphine was there, other than as a breakdown product from heroin? That's the question I'm asking. There was not evidence at trial of a particular source of morphine. There was evidence that Richard Clemus was not the only one. Nor, I gather, was there any other evidence about what could have happened to the capsules that the victim bought from the defendant an hour and a half before his death? Well, Your Honor, there isn't evidence that capsules were purchased from Mr. Clemus by the decedent. There is no evidence, particularly, that there was heroin distributed to Mr. Clemus other than inferential address messages. Certainly not that there was a type of heroin or a form of heroin that was distributed. And for this reason, the government chose to place this irrelevant heroin capsule evidence in the middle of the Tyler McKinney evidence to create that inference, because there was none. It wasn't properly supportable by the evidence that was introduced at trial. And as I said, Your Honor, both of the experts testified that they could only conclude that morphine intoxication was the bought for cause of death. And they could not conclude that it was a heroin overdose. And it's the responsibility of the prosecutor to prove that it would have been a heroin overdose and to adduce evidence, tending to show ingestion of heroin and actual bought for causation, not just distribution of heroin, which only the evidence at trial inferred distribution. And the point about count two is it's not just an insufficiency of the evidence claim here. The insufficiency of the evidence went hand-in-hand with the prosecutorial misconduct in this case. And without the prosecutorial misconduct, we wouldn't know if the jury would find that count two was sufficient to convict Mr. Clemus based on the evidence presented at trial. There's certainly enough of a question as to whether the evidence is insufficient. But the prosecutor ensured that the jury wouldn't determine anything other than what their duty was to God when they were considering the evidence or lack thereof. And your honors, there was also irrelevant evidence of a Ziploc baggie or a baggie of sorts that the government chose to elicit from Dan Wunder, the lead detective, as well as the stepsister of the decedent. It also had nothing to do with heroin. And the government chose to elicit that testimony anyway. If there was physical evidence, if there were proper inferences that could be created, the government should have presented those to the jury but failed to do so here. But crucially, the prosecutor has an independent duty to ensure that justice is done. And the court has a duty to intervene when prosecutorial misconduct is so egregious that it infects the underlying proceedings and deprives a defendant of a right to a fair trial. All that may be true, but we have an obligation to employ the rule that since there was no objection, only plain error can support reversal. And the Supreme Court has said that there are five elements of plain error. And that leaves you an awful uphill fight. That's correct, Your Honor. But plain error is an opportunity that's afforded to the defendant in instances where prosecutorial misconduct is so egregious and so infected the underlying proceedings that the district court and the prosecutor failed to ensure the administration of justice here. Again, tell me specifically what the prosecutorial misconduct was. There were a number of instances. Most crucially, there was the incendiary sermon appealing to the religious conscience of the community. There was also arguing for the admission of irrelevant heroin capsule testimony, which created an inference of physical evidence that was unsupported. And there was repeated misstating of the scientific evidence conflating two different chemical substances, heroin with morphine, which was also not supported by the evidence at trial. To which objections were made, right? Objections were not made. And plain error affords the opportunity for this court to reverse these prejudicial prosecutorial violations of the Constitution. If there are no further questions, Your Honor, I'll reserve. Mm-hmm. Certainly, counsel. Mr. Garrison. Yes, Your Honor, thank you. May it please the court, my name is Bob Garrison. I prosecuted the case before the district court. I would like to make one point briefly about the permissibility of the Dante's Inferno argument. And after making that point, I will simply stand on the brief and take whatever questions the court may have. The one point that I would like to make is, it seems to me that throughout appellant's brief, the principal objection to the government's employment of the analogy about other drug dealers and Clemmis being worse than them is that there was no evidence about other drug dealers in the trial. Hence, the argument was improper per appellant. But I would point out to the court that on page 8 of the government's brief, I quote, at some length, the testimony of a witness named Christopher Gonzales. Christopher Gonzales testified, I'm a heroin dealer. At one time, Clemmis lived at my house. We both sold heroin out of my house. However, and I'm quoting Gonzales here, I never sold heroin to kids who were 15 or 16 years old. I told Clemmis, quote, you shouldn't be messing with them kids, quote unquote. The point I would like to make before I entertain questions here is, the argument about Clemmis being far more evil than other drug dealers is directly tied in to the fact that the jury heard evidence about Christopher Gonzales, another dope dealer, who testified, I may sell heroin, but I don't sell them to people who are 15 years old. So with that, I will stand on the government's brief. What does any of that have to do with the propositions that the government was charged with proving in this case? Your Honor, I think it's. Degrees of divine culpability don't have anything to do with. Well, I'm trying to, in the nine count indictment, five of the nine counts are age specific, relating to dealing heroin or employing someone in a heroin operation. Right, but the point is that the question for trial is whether the defendant committed the act's charge, not whether he's evil. The jury has to decide the former, not the latter. Obviously so, Your Honor. In this court's opinion in the case of Williams versus Krantz, which I cited, I think it's C-H-R-A-N-Z, this court noted that prosecutorial closing argument is expected to be patient. If we had antiseptic argument where a heinous crime is concerned, we wouldn't expect the argument to be antiseptic, and we certainly are not requiring it. I think it is proper argument, given the evidence from Christopher Gonzalez about even other drug dealers won't sell heroin to children. One of the witnesses who testified said I was 15 years old. Well, right, it's OK to say all of that in closing, because that was part of the evidentiary presentation, right? Yes. The objection is to the Dante's Inferno, Nine Circles of Hell. I think that it is, again, and I'm not going to belabor this, I thought it was a useful framework for putting Clemmis' conduct in the context of the- By the way, do the local high schools assign Dante in English classes? No. Is there any reason to believe that any of the jurors had an accurate understanding of who Dante placed in each of the circles? I'm sure they did not, and that is one reason why I tried to explain the concept of moving from the outer circle to the inner circle. I never compared Clemmis to Judas Iscariot, or the man who assassinated Caesar. I was just trying to make the point- Well, yes, you said they're in the innermost circle, and so should he be. How is that not a comparison? Judge Sykes, in the universe of drug dealers, such as Christopher Gonzalez, I think that's a fair comment on the evidence. I sense the court disagrees. You may find that other people think otherwise. Yes, sir, I'm sure. It's not an attempt to focus the jury's attention on what matters to the outcome of this case. Well, with that in mind, I'd be happy to take any other questions. There was no objection. The plain error standard applies, and so on. Yes, I'm standing on the brief, and I'll be happy to answer any questions you might have otherwise. Thank you, Mr. Garrison. Thank you, Your Honor. Anything further, Ms. Whipple? Thank you, Your Honors. Far from a perfect trial, this was a constitutionally deficient trial, and inferences do not equal beyond a reasonable doubt. And in this instance, the prosecutor ensured that improper and unsupported inferences would equate to beyond a reasonable doubt in the minds of the jury, based on their pronunciation of God's judgment, according to the interpretation of the United States of America. And for these reasons, all of Mr. Clemus's convictions should be reversed. Thank you, Ms. Whipple. And the court appreciates your willingness to accept the appointment, in this case, and your assistance to the court, as well as your client. Thank you, Your Honors. The case is taken under revised.